NAVEGAR, INCORPORATED and Penn Arms, Incorporated, Appellants

v.

UNITED STATES of America, Appellee.

No. 96–5088.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 8, 1996.

Decided Jan. 3, 1997.

Richard E. Gardiner, argued the cause and filed the briefs, Fairfax VA, for appellants.

Mark B. Stern, Attorney, United States Department of Justice, Washington, DC, argued the cause for appellee, with whom Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., United States Attorney, and Michael S. Raab, Attorney, United States Department of Justice, were on the brief.

Before: WALD, GINSBURG and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Federally-licensed firearms manufacturers Navegar, Inc. (doing business as "Intratec") ("Intratec") and Penn Arms, Inc. ("Penn Arms") filed a complaint in federal district court on March 3, 1995, seeking a declaratory judgment that certain provisions of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796 ("the Act"), were outside of Congress' enumerated powers, unconstitutional Bills of Attainder, and vague in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. The government filed a motion for summary judgment on the ground that the complaint did not set forth a justiciable controversy as required by Article III of the United States Constitution, because the plaintiffs had failed to demonstrate that they faced a genuine "threat of

prosecution." Following discovery, the filing of a Joint Stipulation of Fact, additional briefing, and oral argument, the district court on February 1, 1996 issued a Memorandum and Order granting the government's motion and dismissing the case. *Navegar, Inc. v. United States,* 914 F.Supp. 632 (D.D.C.1996). We affirm the dismissal of three of appellants' challenges, but reverse in regard to their other claims, and remand the case for further proceedings on the merits of these latter claims.

## I. BACKGROUND

The Act, which became effective on September 13, 1994, made it unlawful for a person to "manufacture, transfer, or possess a semiautomatic assault weapon," 18 U.S.C. § 922(v)(1) (1994), and defined "semiautomatic assault weapon" to include "any of the firearms, or copies or duplicates of the firearms in any caliber, known as ... INTRATECTEC–9, TEC–DC9 and TEC–22; and ... revolving cylinder shotguns, such as (or similar to) the Street Sweeper and Striker 12." 18 U.S.C. § 921(a)(30)(A) (1994). The definition of "semiautomatic assault weapon" also includes semiautomatic pistols that have "an ability to accept a detachable magazine" and at least two of five other specified characteristics. 18 U.S.C. § 921(a)(30)(C) (1994).

Section 922(w)(1) of the Act outlawed the transfer or possession of any "large capacity ammunition feeding device," which section 921(a)(31) defined to include ammunition magazines manufactured after the date of enactment of the Act which can hold more than ten rounds of ammunition. *See* 18 U.S.C. §§ 922(w)(1), 921(a)(31) (1994).

The Act provides exemptions for transfer of these weapons to government agencies and law enforcement officers, 18 U.S.C. § 922(v)(4) and (w)(3), and for export of the weapons under certain conditions. Units lawfully possessed on the effective date of the Act are "grandfathered," meaning they may lawfully be transferred and possessed after the Act's passage. 18 U.S.C. § 922(v)(2), (w)(2) (1994). Persons convicted of knowingly violating these provisions of the Act are subject to fines and prison sentences

of up to five years. 18 U.S.C. § 924(a)(1) (1994).

On the day the Act became law, inspection agents from the Bureau of Alcohol, Tobacco and Firearms ("ATF") visited the facilities of Intratec and Penn Arms, informed officers of these companies of the prohibitions cited above, and gave notice that they planned to conduct inventories of the weapons that would be "grandfathered" under the Act. Over the next two days, ATF inspection agents conducted these inventories. Appellants ceased the manufacture and transfer of the outlawed weapons from the date of the Act's enactment, and have expressed no intention to violate the Act in the future. On September 26, 1994, the ATF sent a letter to appellants and other firearms manufacturers which summarized the above-described prohibitions.

## II. DISCUSSION

### A. *Justiciability Requirements*

■ The district court's grant of summary judgment on the ground of lack of standing is subject to *de novo* review by this court. *See, e.g., Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir. 1994). .

■ Article III of the United States Constitution limits the role of the federal courts to the decision of "cases" and "controversies." U.S. CONST. art III, § 2. Before undertaking to decide any dispute brought before it, a federal court must first assure itself that the dispute presented by the parties represents a justiciable "case" or "controversy"; that is, that the plaintiff suffers an actual injury fairly traceable to some challenged action of the defendant and likely to be redressed by the judicial relief requested, and that the factual claims underlying the plaintiff's challenge are concrete enough and the legal issues submitted for decision sharply focused enough to ensure that a genuine clash between the parties exists. *See Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 471, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982). This principle of justiciability derived from Article III serves several important functions, not the least of which

are maintaining the limits on judicial power appropriate in a democratic society, *see Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975), and ensuring that the federal courts act only when the disputes brought before them involve sharply-defined issues pressed by truly adversary parties with a genuine stake in the outcome. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977); *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

Under the "standing" component of Article III justiciability doctrine, plaintiffs in a federal court must demonstrate that their claims spring from an "injury in fact"—an invasion of a legally protected interest that is "concrete and particularized," "actual or imminent," "fairly traceable" to a challenged act of the defendant, and likely to be redressed by a favorable decision in the federal court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992). Even where these requisites for Article III standing are present, a federal court may still deny standing under certain "prudential" principles. *See Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979). Standing may be denied on prudential grounds, for example, to litigants who present abstract questions of wide public significance that would more appropriately be addressed by the representative branches of government, or who seek to assert the rights of third parties or to proffer grievances not relevant to the "zone of interests" intended to be protected or regulated by the statute or constitutional guarantee in question. *See Valley Forge,* 454 U.S. at 474–75, 102 S.Ct. at 759–60; *Gladstone,* 441 U.S. at 99–100, 99 S.Ct. at 1607–08.

A related component of justiciability which is particularly relevant in the context of actions for preenforcement review of statutes is "ripeness," which focuses on the timing of the action rather than on the parties seeking to bring it. In deciding whether a case is ripe for adjudication, federal courts generally consider the hardship to the parties of withholding court resolution (a factor that overlaps with the "injury in fact" facet of standing doctrine), and the fitness of the issues for judicial decision (a factor that resembles the prudential concerns applied in the standing context). *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515–16. By refusing to hear disputes which are not yet ripe, federal courts avoid becoming entangled in "abstract disagreements," *id.* at 148, 87 S.Ct. at 1515, enhance judicial economy, and ensure that a record adequate to support an informed decision exists when the case is heard.

Even when the criminal statute that a litigant challenges has not yet been enforced against her, the challenger's claim may be justiciable if the challenger can demonstrate that she faces a threat of prosecution under the statute which is credible and immediate, and not merely abstract or speculative. In the proper circumstances, such threats of enforcement can simultaneously ripen a preenforcement challenge and give the threatened party standing. *See, e.g., Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298–99, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979); *American Library Ass'n v. Barr,* 956 F.2d 1178, 1196 (D.C.Cir.1992); *see generally* 13A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3532.5 (1984). A credible threat of imminent prosecution can injure the threatened party by putting her between a rock and a hard place—absent the availability of preenforcement review, she must either forego possibly lawful activity because of her well-founded fear of prosecution, or willfully violate the statute, thereby subjecting herself to criminal prosecution and punishment. *See Babbitt,* 442 U.S. at 298–99, 99 S.Ct. at 2308–09. In such situations the threat of prosecution provides the foundation for justiciability as a constitutional and prudential matter, and the Declaratory Judgment Act, 28 U.S.C. § 2201 (1994), provides the mechanism for seeking preenforcement review in federal court. *See Steffel v. Thompson,* 415 U.S. 452, 480, 94 S.Ct. 1209, 1226, 39 L.Ed.2d 505 (1974) ("the declaratory judgment procedure

is an alternative to pursuit of the arguably illegal activity") (Rehnquist, J., concurring). Federal courts most frequently find preenforcement challenges justiciable when the challenged statutes allegedly "chill" conduct protected by the First Amendment, but preenforcement challenges have been heard outside of the First Amendment context as well. *See, e.g., Regional Rail Reorg. Act Cases,* 419 U.S. 102, 122–25, 95 S.Ct. 335, 348–49, 42 L.Ed.2d 320 (1974) (finding hardship sufficient to ripen the controversy and to create a present injury where the challenged statute threatened a taking for which the plaintiffs would never be compensated); *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 506–08, 92 S.Ct. 1749, 1755–56, 32 L.Ed.2d 257 (1972) (finding sufficient injury and ripeness where boat owners were effectively required, by a soon to be implemented state law, to install new sewage pumping facilities on their boats); *Abbott Laboratories,* 387 U.S. at 152–53, 87 S.Ct. at 1517–18 (finding sufficient hardship where the alternative to risking criminal and civil penalties was far-ranging and expensive relabeling of drug products).

**B.** *Challenges to the Portions of the Act Referring to Specific Brand Names and Models*

Appellants' complaint includes a total of six challenges to the constitutionality of the Act, set out in five counts. Count I includes two claims—one alleging that § 922(v)(1) exceeds the powers of Congress enumerated in the Constitution, and one making the same allegation regarding § 922(w)(1). Count II sets out Intratec's claim that § 922(v)(1), in combination with the definition of "semiautomatic assault weapon" in § 921(a)(30)(A)(viii), is an unconstitutional Bill of Attainder, and Count V includes Penn Arms' Bill of Attainder challenge to § 922(v)(1) in combination with § 921(a)(30)(A)(ix) insofar as the latter subsection includes Penn Arms' "Striker 12" weapon in the definition of "semiautomatic assault weapon." Count III states Intratec's claim that § 921(a)(30)(C), which includes semiautomatic pistols with certain combinations of features in the definition of prohibited weapons, is vague in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution, and in Count IV Penn Arms directs a similar challenge to the general language in § 921(a)(30)(A)(ix).

Appellants' enumerated powers challenge to § 922(v)(1), and all of their Bill of Attainder claims, involve portions of the Act that single out specific weapons manufactured only by the appellants. These portions of the Act make it unlawful to manufacture or transfer Intratec's "TEC–9," "TEC–DC9," and "TEC–22" models, and Penn Arms' "Striker 12" model. *See* 18 U.S.C. § 922(v)(1) and §§ 921(a)(30)(a)(viii) and 921(a)(30)(A)(ix) (1994). Because the weapon-specific nature of these provisions puts them in a special posture with regard to the issues of ripeness and standing, we address these challenges separately from the challenges based on the generally-worded provisions of the Act.

■ The question of whether a threat of prosecution adequate to satisfy the requirements of justiciability is present in any particular preenforcement challenge is a factual and case-specific one. Federal courts look to a variety of factors to determine whether the plaintiff's decision to forego certain activity is truly motivated by a well-founded fear that engaging in the activity will lead to prosecution under the challenged statute. *See, e.g., Steffel,* 415 U.S. at 459, 94 S.Ct. at 1215–16; *Lion Mfg. v. Kennedy,* 330 F.2d 833, 839 n. 10 (D.C.Cir.1964).

■ In concluding that appellants had failed to show that they faced a genuine threat of prosecution in this case, the district judge focused on the circumstances surrounding the visits by ATF agents to appellants' facilities. *Navegar,* 914 F.Supp. at 636. Finding that such visits to regulated entities are routine and that the visiting agents were not themselves authorized to bring criminal investigations, the judge here concluded that appellants faced no credible threat of prosecution. *Id.* We think, however, that the district judge failed to consider the full panoply of circumstances relevant to the plaintiffs' claim of an imminent threat of prosecution; the judge focused on a few saplings in a forest of far more significant growth.

The most important circumstance that the district judge overlooked is that the Act in effect singles out the appellants as its intended targets, by prohibiting weapons that only the appellants make. This fact sets this case apart from most others in which preenforcement challenges to the Act have been held nonjusticiable. *Cf. San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir.1996) (dismissing preenforcement challenge to the Act brought by an individual holder of a federal license to sell firearms)[1]; *but see National Rifle Ass'n v. Magaw*, 909 F.Supp. 490 (E.D.Mich.1995) (dismissing preenforcement challenges to the Act, including one by Intratec), *appeal pending*, No. 95–2150 (6th Cir.). It also makes the applicability of the statute to appellants' business indisputable: if these provisions of the statute are enforced at all, they will be enforced against these appellants for continuing to manufacture and sell the specified weapons (the only possible exception being the prosecution of people making "copies or duplicates" of the outlawed weapons, as provided in 18 U.S.C. § 921(a)(30)(A)).

. Because it is clear to whom these provisions of the Act would be applied were they to be applied at all, the imminent threat of such prosecutions can be deemed speculative only if it is likely that the government may simply decline to enforce these provisions at all. This argument has generally been found compelling only when litigants seek preenforcement review of antiquated laws of purely "historical curiosity," claiming that the threat of prosecution under these laws has "chilled" their conduct. *See, e.g., Doe v. Duling*, 782 F.2d 1202 (4th Cir.1986) (dismissing preenforcement challenges to Virginia laws against fornication and cohabitation which had not been enforced against the conduct in which the plaintiffs desired to engage since the 19th century). But the Violent Crime Control and Law Enforcement Act of 1994 is decidedly not a "historical curiosity"; in fact, the ink had barely dried on this extraordinarily high-profile piece of legislation when pro-enforcement activities

began. And the fact that the Act specifically names products made only by the appellants is telling indeed, because it shows that the law places a high priority on eliminating this portion of the appellants' business. The visits by the ATF agents to appellants' places of business merely provide a bit of additional support for a fear of prosecution already firmly grounded in the language of the Act itself. By sending its agents to notify appellants of the prohibitions of the Act on the day it was passed, directing them to conduct an immediate inventory of "grandfathered" weapons, and following up the visits by sending appellants a letter reminding them of the prohibitions of the Act, the government made it quite clear that it had every intention of enforcing these prohibitions. As in *Lake Carriers' Ass'n*, the government affirmatively "sought on the basis of the act and the threat of future enforcement to obtain compliance as soon as possible," to make the Act "present[ly] effective[ ] in fact" for these appellants. *Lake Carriers' Ass'n*, 406 U.S. at 507, 92 S.Ct. at 1755–56.

To conclude that the appellants face no credible threat of prosecution under these portions of the Act, we would have to believe that the government would enact a widely publicized law targeting products that only the appellants make, send its agents to the appellants' facilities on the day of enactment to inform them of the law's prohibitions and to begin quarantining "grandfathered" units, and soon thereafter remind appellants of the provisions of the Act by letter, but then sit idly by while the appellants continued to manufacture the outlawed weapons. To imagine that the government would conduct itself in so chimerical a fashion would be to declare in effect that federal courts may never, in the absence of an explicit verbal "threat," decide preenforcement challenges to criminal statutes. This has never been the law. To require litigants seeking resolution of a dispute that is appropriate for adjudication in federal court to violate the law and subject themselves to criminal prosecution before their challenges may be heard

---

**1.** Two federal courts have dismissed preenforcement challenges to the Act by means of unpublished orders. *See Kropelnicki v. United States*, No. CA–94–186–1 (W.D.N.C. Nov. 3, 1995), *aff'd by Kropelnicki v. United States*, 92 F.3d 1179, 1996 WL 423066 (4th Cir.1996) (Table); *Todd v. United States*, No. J–C–94–284 (E.D. Ark. Nov. 30, 1994).

would create incentives that are perverse from the perspective of law enforcement, unfair to the litigants, and totally unrelated to the constitutional or prudential concerns underlying the doctrine of justiciability.

It is, in sum, this threat of prosecution which creates the "injury in fact" required under standing doctrine, for the threat forces appellants to forego the manufacture and transfer of the weapons specified in the Act. For the same reason, the threat creates the "hardship" required to ripen the controversy, and because the issues raised in these challenges are purely legal, no prudential considerations weigh against finding that they are appropriate for judicial decision at this time. Thus we hold that the appellants' challenges to the provisions of the Act that single out by model name products that they alone make are justiciable.

### C. Challenges to the Portions of the Act Identifying Prohibited Materials by Characteristics

■ One of appellants' claims alleging that the Act exceeded the powers of Congress enumerated in the Constitution, and all of their claims that the Act is too vague to comply with the Due Process Clause of the Fifth Amendment to the Constitution, are based on portions of the Act which refer to weapons and accessories sharing certain features, rather than to particular brands and models of weapons. The second enumerated powers claim challenges the portion of the Act outlawing "large capacity ammunition feeding devices," which the Act defines as ammunition magazines "that ha[ve] a capacity of ... more than 10 rounds of ammunition." 18 U.S.C. §§ 922(w)(1) and 921(a)(31) (1994). The vagueness claims focus on the provisions that outlaw firearms "known as ... revolving cylinder shotguns," 18 U.S.C. § 921(a)(30)(A)(ix), and semiautomatic pistols that have two out of five listed characteristics. 18 U.S.C. § 921(a)(30)(C) (1994). Because this distinction in the Act's description of the weapons involved in these counts assumes great importance in our justiciability analysis, we discuss them separately.

Appellants' claim to an "injury in fact" giving them standing to challenge these generic provisions of the Act must, as was true in regard to the other claims, be premised on the assertion that the threat of prosecution under these provisions is genuine and imminent; without such a threat the enforcement of these provisions against appellants would be too remote and speculative to render their challenges justiciable. In seeking to show that they have been threatened with the enforcement of these provisions of the Act, appellants can point to some of the same circumstances that we found relevant to the justiciability of their challenges to the portions of the Act that name individual weapons, including the high-profile nature of their business and the publicity accorded to the Act, the visits by the ATF agents, and the letter from the ATF. But they cannot invoke the one factor that we found most significant in our analysis of the other challenges—the statute's own identification of particular products manufactured only by the appellants. In the absence of this factor, the threat of prosecution becomes far less imminent, and these parties' claims to standing concomitantly much weaker. These generic portions of the Act could be enforced against a great number of weapon manufacturers or distributors, and although the government has demonstrated its interest in enforcing the Act generally, nothing in these portions indicates any special priority placed upon preventing these parties from engaging in specified conduct. In such circumstances we cannot say that a genuine threat of enforcement has given rise to the requisite "injury in fact" and thus given these parties standing.

■ Further, because the general nature of the language in these portions of the Act makes it impossible to foretell precisely how these provisions may be applied, the issues presented in these challenges are less fit for adjudication, suggesting additional concerns as to their ripeness. We can hold a statute to be impermissibly vague on its face only if we conclude that it is capable of no valid application, see Village of Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 495,

102 S.Ct. 1186, 1191–92, 71 L.Ed.2d 362 (1982),[2] and in the absence of an enforcement action either commenced or specifically threatened, we have no actual or imminent concrete application of the statute in which to anchor our inquiry into whether any valid application is possible. For these reasons, we hold that the appellants' challenges to the portions of the Act which describe the outlawed items in general categorical terms are not justiciable at this time.

For the foregoing reasons, we *reverse* the judgment of the district court as to the appellants' claims that 18 U.S.C. § 922(v)(1) exceeds the enumerated powers of Congress, that § 922(v)(1) in combination with § 921(a)(30)(A)(viii) is an unconstitutional Bill of Attainder, and that § 922(v)(1) in combination with § 921(a)(30)(A)(ix) is an unconstitutional Bill of Attainder, we *affirm* the judgment of the district court with regard to dismissal of the appellants' claims that 18 U.S.C. §§ 921(a)(30)(A)(ix) and 921(a)(30)(C) are vague in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution, and that § 922(w)(1) exceeds the enumerated powers of Congress, and we *remand* the case for further proceedings on the merits of the surviving claims.

*So ordered.*

2. Although in *Hoffman Estates* the Court did not discuss the issue of the challenger's standing to attack the challenged statute, its discussion demonstrates that a party-specific and product-specific threat of prosecution under the challenged portions of the statute was present in that case. Prior to the time that the appellee store, a seller of marijuana-related products, brought suit to challenge the town's drug paraphernalia ordinance, the village had already conducted an administrative inquiry, determined that the appellee was one of two stores in the village violating the ordinance, and asked appellee to remove the items being sold in a certain section of the store "for his protection." *Hoffman Estates*, 455 U.S. at 493, 102 S.Ct. at 1190.