**FARM SANCTUARY, INC. and Michael Baur, Plaintiffs,**

v.

**Ann M. VENEMAN, in her official capacity as Secretary, United States Department of Agriculture, and United States Department of Agriculture, Defendants.**

No. 01 Civ. 9877(NRB).

United States District Court, S.D. New York.

July 30, 2002.

Kira P. Watson, Bryan Cave LLP, New York City, for Plaintiffs.

Edward Chang, Assistant United States Attorney, New York City, for Defendant.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Plaintiffs Farm Sanctuary, Inc. ("Farm Sanctuary") and Michael Baur ("Baur") filed this action seeking a declaratory judgment holding that the Secretary of Agriculture Ann Veneman and the United States Department of Agriculture ("USDA" or "Government") must classify all downed livestock as adulterated pursuant to 21 U.S.C. § 342(a) and an injunction prohibiting the USDA from allowing non-ambulatory animals to be used for human consumption. Defendants have moved to dismiss the complaint, inter alia, on the grounds that plaintiffs lack standing to sue. For the reasons discussed below, the Government's motion is granted.

### BACKGROUND

Plaintiffs filed this complaint on November 7, 2001, seeking to require the Government to address issues arising out of the slaughter of non-ambulatory animals, also known as "downed livestock." Complaint ¶ 13. Among the illnesses that can cause animals to collapse are transmissible spongiform encephalopathies. The form that affects cattle, Bovine Spongiform Encephalopathy ("BSE"), is commonly referred to as "mad cow disease." Humans who eat BSE-infected beef may be at risk of contracting variant Creutzfeldt–Jakob disease ("vCJD"), a fatal degenerative brain disor-

der. *Id.* ¶ 14. Plaintiffs allege that downed livestock are only briefly inspected before slaughter and that in that short period, "it is simply impossible to determine with certainty whether a downed animal is infected with BSE." *Id.* ¶ 15. The complaint also alleged that the downed animals are often neglected and taken to slaughterhouses in an inhumane manner. *Id.* ¶ 13.

Baur claims that, as a regular consumer of meat products, he is at risk of contracting vCJD whenever he eats meat. He contends that, in light of the deaths from vCJD in Great Britain, he is apprehensive about the safety of the meat he consumes. *Id.* ¶¶ 28–30. Farm Sanctuary is a nonprofit corporation with approximately 90,000 members nationwide that promotes humane animal treatment. *Id.* ¶ 7. It has lobbied state and federal governments on issues relating to downed animals, and its staff members visit livestock facilities to investigate allegations of downed animal cruelty. It alleges that its staff members suffer "clear and direct aesthetic injury" while conducting these activities. *Id.* ¶¶ 31–33.

On March 4, 1998, plaintiffs filed a petition requesting that the Food and Drug Administration and the USDA label all downed cattle as adulterated under 21 U.S.C. § 342(a), the Federal Food, Drug, and Cosmetic Act ("FFDCA"). Compl. Ex. B. The USDA denied the petition on March 25, 1999, on the grounds that the USDA does not apply the FFDCA definition of "adulterated" but instead uses the definition set out in the Federal Meat Inspection Act ("FMIA"). After plaintiffs filed the complaint, the Government moved to dismiss the complaint on the grounds that the plaintiffs lack standing to sue, that plaintiffs failed to state a claim upon which relief can be granted because the USDA has no authority to enforce or interpret the FFDCA, and that the USDA's decision was not arbitrary or capricious.

## *DISCUSSION*

### I. Required Elements of Standing

In order for a plaintiff to have standing to sue the government, a plaintiff must show: 1) that is has suffered an injury in fact; 2) that the government's action caused that injury; and 3) that the remedy sought can redress the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "The injury alleged must be, for example, distinct and palpable, and not abstract or conjectural or hypothetical." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (internal quotation omitted). In addition, the case law has established prudential limitations on the right to sue, in particular the "zone of interests" test, which requires the plaintiff to show that the law under which a plaintiff was actually intended to protect the plaintiff against its claimed injury. *Id.*

The burden is on the plaintiffs to establish that they have standing. *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329–30 (2d Cir.1997). On a motion to dismiss under Fed.R.Civ.P. 12(b)(6), we accept all of plaintiffs' material allegations as true and construe the complaint in the light most favorable to the non-moving party. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)

### II. Baur's Standing

Baur claims that his injury is based on the fact that, as a meat eater, he is concerned about the possibility of eating meat of a BSE-infected cow and contracting vCJD. The Government contends that this injury is "mere speculation" based on a series of hypothetical events: that BSE might be brought to the United States;

that it will not be detected; and that Baur will consume the meat from an infected animal. Gov't Mem. at 11.

Plaintiffs contend that Baur need not suffer a physical injury in order to have standing. *See Animal Legal Defense Fund v. Glickman*, 154 F.3d 426, 437 (D.C.Cir.1998) (stating that a species or environmental feature need not be eradicated in order for a plaintiff to have standing). The plaintiff must, however, show that the threat is imminent. *See Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (holding that plaintiff must show a realistic danger of direct injury in order to have standing); *Navegar, Inc. v. United States*, 103 F.3d 994, 999–1002 (D.C.Cir.1997) (holding that threat of prosecution of plaintiff was imminent when statute expressly prohibited guns made by plaintiff and federal officials made clear to plaintiff that they intended to enforce the statute).

Plaintiffs argue that the increased risk to the food supply created by the threat of BSE contamination is an adequate injury. *See Kenney v. Glickman*, 96 F.3d 1118, 1120 (8th Cir.1996) (affirming finding that plaintiffs had standing to sue USDA over its failure to institute a zero tolerance policy for contaminated poultry carcasses). Similarly, in *Public Citizen v. Foreman*, the court found standing because plaintiffs could not purchase nitrite-free bacon at a reasonable price. 631 F.2d 969, 974 n. 12 (D.C.Cir.1980). *See also Cutler v. Kennedy*, 475 F.Supp. 838, 850 (D.D.C.1979) (finding that standing existed where plaintiff based his injury on his fear that he would be exposed to product ingredients that had not been tested by the FDA and that plaintiffs could not track which products contained these ingredients). These cases are all distinguishable as the contaminated or untested product was actually on the market. In contrast, here plaintiffs have provided no evidence that BSE has been detected in the United States, let alone that any BSE-infected meat has actually been sold. Thus, Baur's injury is not as direct as those suffered by the plaintiffs in the cases discussed above.

Baur's harm is more appropriately classified as hypothetical rather than imminent. The following cases are illustrative. In *Northwest Airlines, Inc. v. Federal Aviation Admin.*, 795 F.2d 195 (D.C.Cir.1986), the D.C. Circuit faced the issue of a plaintiff claiming injury based on a chain of events. The airline sued to prevent the FAA from granting a special issuance of a medical certificate for a pilot whom Northwest had fired for flying while intoxicated. The certificate would have permitted the pilot to resume flying if he followed certain conditions. *Id.* at 198–99. The court held that the airline lacked standing to challenge the issuance because it had not established that the pilot would be recertified to fly or that it would be harmed even if the FAA did permit him to fly again because there was no certainty that he would fly anywhere near a Northwest aircraft. Therefore, the court ruled, the airline's injury was hypothetical. *Id.* at 202.

The Supreme Court took a similar approach to the imminent harm requirement in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). The Court held that, even though the plaintiff had been previously held in a chokehold by Los Angeles Police officers, there was not a sufficient likelihood that the plaintiff would again be placed in a similar position to warrant a finding that plaintiff faced an imminent, rather than a hypothetical, future injury. *Id.* at 102, 103 S.Ct. 1660. The Court went on to state that the plaintiff's subjective apprehensions about being injured in another chokehold were insufficient to warrant a

finding of standing. *Id.* at 107 n. 8, 103 S.Ct. 1660.

Moreover, Baur's purported injury is too remote to warrant standing. The record provides no evidence of BSE in the United States, and the mere fact that the plaintiffs want the federal government to pursue a particular regulatory action does not satisfy the standing requirement. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 483, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (holding that the "assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning."). The USDA has not inflicted a cognizable injury on Baur; his proper recourse is to the legislative branch, not the judicial branch.

Finally, if we were to find that Baur's fear of contracting vCJD constituted a direct injury, then any citizen would have standing to sue to direct the federal government to take an action to improve health, occupational, or environmental safety. The standing requirement would no longer be a genuine test. *See Allen v. Wright,* 468 U.S. at 751, 104 S.Ct. 3315 (stating that the tests for standing "cannot be defined so as to make application of the constitutional standing requirement a mechanical exercise."). A plaintiff's injury cannot be abstract or based on a series of hypotheticals. We find that Baur's purported injury is simply too speculative to meet the requirement of injury-in-fact under the standing doctrine. Accordingly, Baur lacks standing to sue the USDA.

### III. Farm Sanctuary's Standing

█ Farm Sanctuary bases its standing to sue on the fact that its members suffer mental injury when they travel to slaughterhouses to observe the treatment of cat-

tle. The Government does not dispute Farm Sanctuary's injury-in-fact. *See Animal Legal Defense Fund,* 154 F.3d at 428 (plaintiff relying on Animal Welfare Act had standing based on injury suffered by plaintiff in seeing animals mistreated).

The Government challenges Farm Sanctuary's standing on the grounds that it falls outside of the "zone of interests" protected by the statute. The zone of interests test is a prudential requirement considered when determining whether a plaintiff has standing. *National Credit Union Admin. v. First Nat. Bank & Trust Co.,* 522 U.S. 479, 488, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998). *See also Air Courier Conference of America v. American Postal Workers Union* 498 U.S. 517, 523–24, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991) (holding that courts should not conflate the zone of interests test with a determination of injury-in-fact).

█ Plaintiffs argue that the zone of interests test is not intended to be demanding, and standing should be found for parties who are arguably within the zone of interests. *National Credit Union Admin.,* 522 U.S. at 493, 118 S.Ct. 927 (holding that a plaintiff is within the zone of interest if its injury is one that is "arguably to be protected" by the statute) (internal quotation omitted). There must, however, be evidence that Congress intended to protect a plaintiff's interest under the statute. *Clarke v. Securities Ind. Ass'n,* 479 U.S. 388, 399, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987) (stating that standing should not be granted "if the plaintiff's interests are so marginally related to or inconsistent with the purposes of the statute that it cannot be reasonably be assumed that Congress intended to permit the suit.")

Farm Sanctuary has sued under the FMIA, which was designed to ensure a safe meat supply. 21 U.S.C. § 602. Farm

Sanctuary's injury, that its members are harmed when they observe the treatment of animals at slaughterhouses, is beyond the scope of the FMIA. Plaintiffs argue that they are asserting a similar interest to the plaintiff in *Animal Legal Defense Fund,* namely, ensuring the humane treatment of animals. However, the Animal Legal Defense Fund sued under the Animal Welfare Act, the express purpose of which was to ensure "a physical environment adequate to promote the psychological well-being of primates." 7 U.S.C. § 2143(a). Here, Farm Sanctuary is suing under the FMIA, which was enacted to protect the food supply. The humane treatment of stockyard animals is addressed separately, in the Humane Methods of Slaughter Act. 21 U.S.C. §§ 603(b), 610(b).

Undeterred, plaintiffs argue that the zone of interests test extends to parties "who in practice can be expected to police the interests that the statute protects." *Mova Pharmaceutical Corp. v. Shalala,* 140 F.3d 1060, 1075 (D.C.Cir.1998). But the D.C. Circuit's suitable challenger test requires that a plaintiff show an "inevitable congruence" between its interest and the interest the statute was intended to protect. *Id.* (citing *National Credit Union Admin.,* 522 U.S. at 492–93, 118 S.Ct. 927). Plaintiffs argue that Farm Sanctuary is "furthering its goals while doing something for the common good." Pl. Opp. at 12. The fact that Farm Sanctuary is acting on behalf of the common good does not mean that its injury is the harm that Congress intended to protect under the statute. While Farm Sanctuary's goals and those of the statute are not mutually exclusive, the fact that they may overlap does not mean that there is an inevitable congruence between them. If Farm Sanctuary's claim was held to be within the zone of interests protected by the FMIA, then any plaintiff claiming to sue in the public interest would have standing, thus depriving the zone of interests test of its meaning. *See Air Courier Conference,* 498 U.S. at 530, 111 S.Ct. 913.

The language of the FMIA clearly does not contemplate protecting against injuries based on the inhumane treatment of animals. Accordingly, Farm Sanctuary's claim does not fall within the zone of interests contemplated by the statute, and it lacks standing to bring this suit.

### CONCLUSION

For the reasons stated above, we find that neither plaintiff has standing to sue. Accordingly, the Government's motion to dismiss the complaint is granted. The Clerk of the Court is respectfully requested to close this case.

**IT IS SO ORDERED.**